**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
The Honorable Michael E. Romero**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 11-33991-MER |
| ROBERTO E. SOBERANIS-SOBERANIS | ) | |
| SOLEDAD A. TEJERINA | ) | Chapter 7 |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| RICHARD A. WIELAND | ) | |
| United States Trustee Region 19, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| EMMANUEL M. ASSAF | ) | |
| SAN JUANITA OLMOS, and | ) | |
| ROCIO REZA-ORTEGA | ) | |
| | ) | Signed/Docketed |
| Respondents. | ) | April 12, 2012 |

**ORDER**

THIS MATTER comes before the Court on the following pleadings:

- *United States Trustee's Motion for Order to Emmanuel Assaf, San Juanita Olmos and Rocio Reza-Ortega to Show Cause Why Fines, Penalties, Injunctive and Other Relief Should Not Be Ordered Against One or All of Them Under 11 U.S.C. §§ 105, 110 and 526*[1] (Docket No. 20) (the "Motion"),

- This Court's *Order to Emmanuel Assaf, San Juanita Olmos, and Rocio L. Reza Ortega to Show Cause Why Fines, Penalties, Injunctive and Other Relief Should Not Be Ordered Against One or All of Them Under 11 U.S.C. §§ 105, 110, and 526* (Docket No. 21) (the "Order to Show Cause"),

- Emmanuel M. Assaf's *Response to U.S. Trustee's Motion for Order to Show Cause Why Fines, Penalties and Other Relief Should Not Be Ordered Against Emmanuel M. Assaf* (Docket No. 26) (the "Assaf Response"), and

_____

[1] Unless otherwise noted, all future statutory references in the Order are to Title 11 of the United States Code.

- San Juanita Olmos's *Response to U.S. Trustee's Motion for Order to Show Cause Why Fines, Penalties and Other Relief Should Not be Ordered Against San Juanita Olmos* (Docket No. 28) (the "Olmos Response").

## JURISDICTION

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334(a) and (b) and 157(a) and (b).  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) as it concerns the administration of the estate.

## PROCEDURAL AND FACTUAL BACKGROUND

Roberto E. Soberanis-Soberanis ("Soberanis") and Soledad A. Tejerina ("Tejerina") (collectively, the "Debtors") filed this Chapter 7 case on October 11, 2011. The "Disclosure of Compensation" and "Declaration and Signature by Non-Attorney Bankruptcy Petition Preparer" were filed by Emmanuel M. Assaf ("Assaf").  Assaf is a bankruptcy petition preparer in Arvada, Colorado, and disclosed he agreed to accept a fee of $200 for his services.  On December 8, 2011, the Debtors attended their Meeting of Creditors held pursuant to § 341 (the "Creditors' Meeting") and provided sworn testimony before Chapter 7 Trustee, Janice Steinle ("Steinle").

On December 29, 2011, the United States Trustee ("UST") filed the instant Motion.  According to the UST, the Debtors testified at the Creditors' Meeting that they paid $1,400 to San Juanita Olmos ("Olmos") for the bankruptcy assistance provided by Assaf and/or Rocio Reza-Ortega ("Reza-Ortega"), a portion or all of which was apparently funneled to Assaf and/or Reza-Ortega.  In his Motion, the UST sets forth the events which took place and the alleged information and advice that was given leading up to the filing of the Debtors' bankruptcy petition.  For example, the UST alleges Olmos, Assaf and/or Reza-Ortega gave the Debtors advice regarding the filing fee (and waiver thereof), canceling an existing debt settlement contract, taking the pre-petition and post-petition counseling courses, and that they would be able to keep their car. Further, the UST alleges:

> Debtors state that they did not give Assaf, Olmos, or Rocio any draft of any bankruptcy document for preparation or typing, nor did they direct Assaf, Olmos, or Rocio on how to prepare the documents; rather, Debtors state that Assaf, Olmos, and/or Rocio prepared all the paperwork based on the scant documents provided by Debtors to Olmos, by asking Debtors a few questions, and possibly procuring other information independently, such as a credit report.[2]

---

[2] Motion, ¶ 6.h.

The UST asserts Assaf, Olmos and possibly Reza-Ortega were all acting within the definition of bankruptcy petition preparers under § 110(a)(1), but did more than just prepare forms and further, failed to perform certain other obligations.  Although Assaf signed certain documents filed in this case and provided his Social Security number, the UST asserts Assaf, Olmos and/or Reza-Ortega failed to sign and include a Social Security number on several other documents as required by § 110(b)(1)(A) and (c)(1).  The UST asserts Assaf's disclosure of compensation was inaccurate and Olmos and Reza-Ortega should have, but failed to, file a disclosure of compensation, all in violation of § 110(h)(2).

The UST points out a bankruptcy petition preparer is prohibited by § 110(e) from providing legal advice, including providing debtors with questionnaires for the purpose of filling out any bankruptcy document or by determining which bankruptcy forms should be completed, providing such forms, inputting information into such forms independent of any direction or draft provided by debtors, and characterizing the nature of debtors' interests or debts.  However, as is discussed in more detail below, the UST also advised the Court that Assaf has been previously sanctioned and warned regarding the practices alleged to have occurred in this case.  Specifically, the UST asserts on September 9, 2009, Assaf was publicly enjoined from engaging in any further acts of unauthorized practice of law by Order of the Colorado Supreme Court.[3]  According to the UST, this Order was entered, in part, because of the finding that Assaf was providing legal advice to potential bankruptcy debtors in Colorado.  At the evidentiary hearing before this Court on February 29, 2012, Assaf stated the Colorado Supreme Court did not enjoin him from practicing law; rather he made an voluntary agreement with them not to do so.

The UST believes the Debtors may not have personally taken the pre-petition and post-petition counseling courses.  Instead, one or both Debtors provided answers to a person at Assaf's office.  The UST alleges the documents and statements prepared by Assaf, Olmos and/or Reza-Ortega related to counseling classes appear, "fraudulent, unfair, or deceptive" or "untrue and misleading, or that upon the exercise of reasonable care, should have been known by such agency to be untrue or misleading."[4]

Based on all of these allegations, the UST asserts Assaf, Olmos and/or Reza-Ortega have violated § 110 and injunctive remedies are appropriate, including enjoining Assaf, Olmos and/or Reza-Ortega from acting as bankruptcy petition preparers.  The

---

[3]  *The People of the State of Colorado v. Assaf* (Colo., Case No. 09SA080).  *See also In re Espinoza*, Case No. LA 07-18881 (Bankr. C. D. Ca. 2008) (at the evidentiary hearing on February 29, 2012, Assaf claimed he was not adequately represented in the California proceeding), *In re Briones-Coroy*, Case No. 10-40900-SBB (Bankr. D. Colo.), and *U.S. Trustee v. Assaf*, 11-01311-SBB (Bankr. D. Colo.).

[4]  Motion, ¶¶ 15-16.

UST also seeks remedies under § 526 to the extent Assaf, Olmos and/or Reza-Ortega also acted as "debt relief agencies."

In support of the requested remedies, the UST cites to:

- § 110(h)(3) which provides for mandatory forfeiture of all fees,
- § 110(i)(1) which provides for a mandatory minimum $2,000 penalty (for each Debtor),
- § 110(l)(1) which provides for a $500 fine for "each" failure to comply with § 110,
- § 110(l)(2) which provides for tripling of fines,
- §§ 105(a), 110(j) and 526(c) which provide for injunctive relief,
- § 526 which provides for a penalty as appropriate to the evidence if the Court finds the Respondents "intentionally violated this section [§ 526], or engaged in a clear and consistent pattern or practice of violating [§ 526]."[5]

On December 30, 2011, the Court issued its OSC, ordering Assaf, Olmos, and Reza-Ortega each to file a response to the matters set forth in the UST's Motion. The OSC further ordered Assaf, Olmos, and Reza-Ortega to appear at a hearing on February 29, 2012, to show cause why fines, penalties, injunctive and other relief should not be ordered against them as allowed by §§ 105, 110 and 526.

In his two-page response, Assaf denied each of the numbered paragraphs in the UST's Motion. In his wherefore clause, Assaf requested, "1. Plaintiff take nothing by this action. 2. That no fines, penalties or sanctions be awarded against Emmanuel M. Assaf. 3. For such other and further relief as the court may deem just and proper."[6] Similarly, in her two-page response, Olmos denied each of the numbered paragraphs in the UST's Motion. In her wherefore clause, Olmos requested, "1. Plaintiff take nothing by this action. 2. That no fines, penalties or sanctions be awarded against San Juanita Olmos. 3. For such other and further relief as the court may deem just and proper."[7] Reza-Ortega failed to file a response.

The Court conducted an evidentiary hearing on February 29, 2012 and March 2, 2012. At the hearing, the Court admitted all of the exhibits tendered by the UST, and heard the testimony of Soberanis, Tejerina, and Reza-Ortega. At the request of the UST, the Court postponed the issues in the UST's Motion as they relate to Reza-Ortega. Olmos failed to appear. Having considered the pleadings, evidence and case law, the Court is prepared to rule on the claims against Assaf and Olmos.

---

[5] 11 U.S.C. § 526.

[6] Assaf Response, p. 2.

[7] Olmos Response, p. 2.

## THE EVIDENCE PRESENTED

**1.     Testimony of Debtor Roberto Soberanis**

Soberanis testified he first met with Olmos on September 18, 2011, for about 15 or 20 minutes at her office in Aurora, Colorado.[8]  Olmos had requested Soberanis bring his pay stubs and 2009 and 2010 tax returns, and indicated she would pull his credit record.  Soberanis testified they discussed the possibility of bankruptcy, that Olmos discussed what chapter of bankruptcy would be better for Soberanis and Tejerina, suggesting a Chapter 7 would be best, and that Olmos told Soberanis a bankruptcy would cancel all his debt.  At that time, Soberanis had not yet heard of, or met with, Assaf or Reza-Ortega.  Soberanis paid Olmos $1,400 on September 18, 2011.[9]

Soberanis had a second meeting regarding filing for bankruptcy on October 11, 2011.  It was at this meeting that Soberanis first met Assaf and his team.  This was the same date the bankruptcy petition for Soberanis and Tejerina was filed.  As for his Petition, Statement of Financial Affairs and Schedules, Soberanis indicated he did not prepare, type, fill in, or check any boxes on these forms.[10]  He only signed on the various signature pages.

Soberanis took his post-petition personal financial management course on November 11, 2011.[11]  Soberanis testified he went to Assaf's office to drop off some documents and was told he needed to take the course.  He was asked by Assaf's staff to fill out some documents and was then seated in front of a computer to take the course.  He testified he starting chatting with a staff member, and "there was just clicking at the computer for like maybe 5 minutes, we were just chatting, nothing about the class, and then she told me that it was done."  Soberanis did not do any typing or

---

[8]  Exhibit 12 is a copy of two of Olmos' business cards with a heading on the first card that states "STOP FORECLOSURE www.SellToSan.com."  The second card states, in part, "Bankruptcies.  'Good and well done at low cost.'  Eliminate all debt and prevent liens.  Preparation of petitions at low cost."  Tejerina testified Olmos gave her these cards at the September 18, 2011 meeting.

[9]  Exhibit 12a is a copy of a receipt dated September 18, 2011, with the following information: (1) Received From: Robert Soberanis; (2) $1,200, check 630; and (3) For: Consultation - San & Affilate.  The signature on the receipt appears to be that of Olmos.  Exhibit 12b is a copy of check 630 dated September 21, 2011, written by Soberanis to Olmos for $1,400.  The "Memo" line states "Banca rota," which means "bankruptcy" in Spanish.  The $1,400 check was signed and cashed by Olmos on September 22, 2012.  Soberanis testified he wrote the check on September 18, 2011, but dated it September 21, 2011, so he could use his paycheck to cover the amount.

[10]  Exhibit 1, bankruptcy Petition, Statement of Financial Affairs, Schedules, etc. (Docket No. 1).

[11]  Exhibit 6, pp.1-2.  *Debtor's Certification of Completion of Postpetition Instructional Course Concerning Personal Financial Management*, dated November 1, 2011, signed by Roberto Soberanis (page 1) and *Certificate of Debtor Education*, dated November 1, 2011, at 12:27 p.m. (page 2).

provide any input as part of the course.  Rather, he testified that a person who worked for Assaf (someone other than Reza-Ortega) did all of the typing and input.

Although there is a Certificate of Debtor Education for Soledad Tejerina dated November 1, 2011, at 12:27 p.m. (the same date and time Soberanis "took" the course), Soberanis testified his wife was not with him at Assaf's office on that date.[12]  Soberanis also stated his wife never told him that she took the postpetition financial management course.

Although Soberanis signed Assaf's "Bankruptcy Typing Agreement," which specifically states Assaf cannot give legal advice, Soberanis testified he did not know what constituted legal advice and what advice did not.  Soberanis now believes Assaf's office provided him legal advice with regard to how the bankruptcy procedure was going to play out.

Assaf attempted to paint Soberanis as biased because he may benefit financially if the Court finds against Assaf and/or Olmos.  However, the Court found Soberanis to be a credible witness as his testimony was consistent with the documents admitted into evidence (other than the intentional back or forward dating of documents as discussed more below) and the other testimony by Reza-Ortega and Tejerina.  Thus, the Court accepts Soberanis' testimony as truthful and accurate.

## 2.    Testimony of Debtor Soledad A. Tejerina

Tejerina testified Soberanis heard an advertisement on the radio for Olmos' bankruptcy services.  Thereafter, Soberanis called Olmos, made an appointment for Sunday, September 18, 2011, and both Tejerina and Soberanis met with Olmos on that date.  Tejerina asserted she did not sign any documents at the meeting on September 18, 2011 (the *Declaration and Signature of Non-Attorney Bankruptcy Petition Preparer* and *Notice to Debtor by Non-Attorney Bankruptcy Petition Preparer* are dated September 22, 2011).

Tejerina also went to the second meeting at Assaf's office on October 11, 2011. Tejerina stated Assaf explained his fees were $200 for typing, $100 for the Workbook and $100 for each certificate, totaling $700.  She further noted she and her husband spoke with Assaf for a few minutes before being handed off to Reza-Ortega to get all of the documents ready to be filed.

With respect to the postpetition financial management course, Tejerina indicated she was not with Soberanis at Assaf's office on November 1, 2011, and did not take the

---

[12]    Exhibit 6, pp.3-4.  *Debtor's Certification of Completion of Postpetition Instructional Course Concerning Personal Financial Management*, dated November 1, 2011, signed by Soledad A. Tejerina (page 3) and *Certificate of Debtor Education*, dated November 1, 2011, at 12:27 p.m. (page 4).

postpetition personal financial management course on that date.[13]  Rather, after being instructed to do so by the Chapter 7 Trustee, Tejerina took the course on December 15, 2011.[14]  Tejerina recalled it took her three (3) hours to complete the course online at home.

### 3.    Testimony of Rocio Reza-Ortega

According to Reza-Ortega, she was employed by Assaf for approximately six months, from around April 2011 to October 17 or 18, 2011.  Initially, Reza-Ortega was hired as a secretary with duties including typing, paperwork, and preparing Schedule Fs for clients.  She was later promoted to office administrator where her duties were increased to include preparation of all the Schedules, the Means Test, the Statement of Intent - everything in the bankruptcy packet.  She recalled meeting the Debtors and assisting in the preparation of their bankruptcy documents.

Reza-Ortega stated the general process for an individual to utilize Assaf's services started with a phone call to the office to schedule an appointment.  The staff would tell the individuals what documents to bring in and they would be given a workbook to complete.  The normal fee for a bankruptcy was a $200 typing fee, $100 for the workbook, $100 for the pre-petition credit counseling class, and $100 for the post-petition debt management class.  For individuals, the total fee was usually $500 and for couples $700.  Most people paid by cash.

Reza-Ortega testified the workbook was created by Assaf and that she (Reza-Ortega) would hand it out to customers.[15]  With respect to the Debtors' workbook, Reza-Ortega admitted the handwriting is hers, because she often obtained some of the information over the phone and filled it in.[16]  For example, on the page for "Current Expenses of Individual Debtor(s)," the handwritten numbers for each expense are those

---

[13]  Exhibit 6, pp.3-4.  Debtor's *Certification of Completion of Postpetition Instructional Course Concerning Personal Financial Management*, dated November 1, 2011, signed by Soledad A. Tejerina (page 3) and *Certificate of Debtor Education*, dated November 1, 2011, at 12:27 p.m. (page 4).

[14]  Exhibit 7, *Certificate of Debtor Education* for Tejerina dated December 15, 2011 at 2:59 a.m.

[15]  The Debtors' workbook is contained within Exhibit 11b (attached as "Exhibit H") and is an 18 page document titled, "Emmauel M. Assaf, Debt Relief Agency, Workbook to Chapter 7 Bankruptcy" (the "Workbook").

[16]  Soberanis' testimony was consistent with Reza-Ortega's testimony.  Soberanis testified he wrote in his full name and address on page 3 of the workbook (Exhibit 11b, p. 15), but none of the other handwriting on the workbook is his.

written by Reza-Ortega.[17]   However, Reza-Ortega believed the handwriting at the bottom of the page, concerning "Your Income Taxes," is that of Assaf.[18]

Additionally, Reza-Ortega stated Assaf or his staff would "prefill," or "precheck" certain answers in the bankruptcy Schedules and Statement of Financial Affairs, and then make copies of the entire bankruptcy packet to use for each new customer.  For example, she testified the first page of the bankruptcy petition would always include a "checked box" for Individual (for "Type of Debtor"), Chapter 7 (for "Chapter of Bankruptcy Code"), and consumer debts (for "Nature of Debts").  The second page of the bankruptcy petition would also always include a "checked box" for the "No" answer in Exhibit C (regarding property that poses a threat of harm) and a "checked box" for Exhibit D (regarding the pre-petition credit counseling).  Assaf's identification information would also be preprinted on page 3 of the petition.  On the Statement of Financial Affairs, question 2 (regarding income other than from employment or operation of business), question 3 (payments to creditors), question 4 (suits and administrative proceedings, executions, garnishments and attachments), and question 5 (repossessions, foreclosures and returns) would always be prefilled out with the "none" box checked.  Question 9 (payments related to debt counseling or bankruptcy) was always preprinted with Assaf's name and address and the amount of $200.  For question 9, the only thing that varied from case to case was the date of payment.

As far as debts being listed on the Schedules, Reza-Ortega was trained that, unless it was a car, home, or taxes, a debt would be listed on Schedule F.  Taxes, if less than three years old, were listed on Schedule E, and, if more than 3 years old, would not be listed.

Reza-Ortega was also trained by Assaf to complete Official Form 22A (the "Means Test").[19]   She testified the box for "The presumption does not arise" was always checked on the first page.  Even though the Means Test, at line 2, states, "All figures must reflect average monthly income received from all sources, derived during the six calendar months prior to filing the bankrutpcy case . . . ," Reza-Ortega testified she was trained by Assaf to determine an individual's income based on an average of three months, using both information provided in the workbook as well as a debtor's actual paystubs.[20]   Line 15 ("The amount on Line 13 is less than or equal to the amount on Line 14") was also always prefilled.

---

[17]  Exhibit 11b, p. 25.

[18]  Exhibit 11b, p. 25.

[19]  Exhibit 1, p. 40, *Chapter 7 Statement of Current Monthly Income and Means-Test Calculation*, Official Form 22A, for the Debtors.

[20]  Soberanis testified he did not understand what this part of the Means Test form required of him, and he never did any kind of 6 month calculation to arrive at the figure on his Means Test form, line 3.

Finally, Reza-Ortega testified concerning her preparation of Official Form 8 (the "Statement of Intention").[21]  Assaf also trained her to complete this form.  She stated, "if the debtor had a secured debt, we'd mark 'surrender' if they didn't want to keep it or we'd mark 'retain' if they wanted to keep it."  Additionally, if an individual wanted to retain his or her property, the staff would always check the "Other" box and type in "Avoid Lien" in the explanation line.[22]

The Court also found Reza-Ortega to be a credible witness as her testimony was consistent with the documents admitted into evidence (other than the intentional back or forward dating of documents) and the other testimony by Soberanis and Tejerina.  Thus, the Court accepts Reza-Ortega's testimony as truthful and accurate.

## 4.      Evidence Regarding the Fee Paid

The Statement of Financial Affairs, question 9, requires the Debtors to make the following disclosure:

> List all payments made or property transferred by or on behalf of the debtor to any persons, including attorneys, for consultation concerning debt consolidation, relief under the bankruptcy law or preparation of a petition in bankruptcy within one year immediately preceding the commencement of this case.[23]

The Debtors disclosed $200.00 was paid to Emmanuel M. Assaf on September 22, 2011.[24]  Likewise, Assaf signed and filed a *Disclosure of Compensation of Bankruptcy Petition Preparer* indicating "For document preparation services I have agreed to accept" $200.[25]  The form further reflects the source of the compensation was the Debtor.[26]

According to Tejerina, on September 18, 2011,  Olmos first indicated the total fee would be $1,200 for Soberanis to file an individual bankruptcy.  Later that same date, Soberanis and Tejerina decided they would file jointly and the fee was increased to

---

[21]  Exhibit 2, *Chapter 7 Individual Debtor's Statement of Intention*, Official Form 8, for the Debtors.

[22]  Exhibit 2, p.1.  Concerning this document, Soberanis stated he did not really know what it meant where it says, "Other.  Explain <u>Avoid Lien</u> (for example, avoid lien using 11 U.S.C. § 522(f)."

[23]  Exhibit 1, p. 14 of 52.  Statement of Financial Affairs, question 9.

[24]  Exhibit 1, p. 14 of 52.  Statement of Financial Affairs, question 9.

[25]  Exhibit 3.  Disclosure of Compensation of Bankruptcy Petition Preparer.

[26]  Exhibit 3.  Disclosure of Compensation of Bankruptcy Petition Preparer.

$1,400.  As noted above, Exhibit 12b is a copy of check 630 dated September 21, 2011, written by Soberanis to Olmos on September 18, 2011, for $1,400.  However, the documents executed by the Debtors and Assaf's Debt Relief Agency (contained in Exhibit 12d) indicate the Debtors paid the following fees:

      (1) $200 as a typing fee;[27]
      (2) $100 for the Workbook;[28]
      (3) $100 for the "1st Certificate;"[29] and
      (4) $100 for the "2nd Certificate."[30]

Thus, the total appears to be $500 and that is what Assaf stated at the hearing that he had received.  All of these documents appear to have been signed on September 22, 2011, but some contain the date October 11, 2011.  Reza-Ortega testified she believed the documents were signed on October 11, 2011, but dated September 22, 2011, because that is when the Debtors were provided a receipt. Soberanis testified he signed the documents on October 11, 2011, but believed the documents were dated September 22, 2011, because the counseling needed to be done 60 days prior to petition date.  In his questioning of Tejerina, Assaf suggested the documents were dated September 22, 2011, because that is the date his office received the fee to assist the Debtors in their bankruptcy filing.

Although the documents in Exhibit 12d indicate otherwise, Reza-Ortega testified Assaf received $700 in compensation for the preparation of the Debtors' bankruptcy documents.  Reza-Ortega stated she did not personally receive any of these fees, other than her employee wage of approximately $8.50 or $9.00 per hour.  Rather, she indicated Assaf received $700 from Olmos for the Debtors' case consisting of $200 for typing, $100 for the workbook, $100 for each Debtor's pre-petition credit counseling class and $100 for each Debtor's post-petition financial management course.  The Debtors' testimony was consistent with this break-down of the fees.  Tejerina and Soberanis admitted Soberanis paid the $1,400 directly to Olmos, and paid nothing directly to Assaf.  However, the Debtors understood from Assaf that he (Assaf) was receiving $700 of the fee.

---

[27]  Exhibit 12d, p.1, Bankruptcy Typing Agreement.

[28]  Exhibit 12 d., p. 6, re: Workbook.

[29]  Exhibit 12 d., p. 7, re: 1st Certificate.  This form states, in part, "I/we hereby declared that I/we paid $100 for the convinience [sic] of using Emmanuel M. Assaf Debt Relief Agency's equipment and that the fee paid also covered the cost of the certificate by the approved credit counseling agency provider named as follows: "Abacus Credit Counseling."

[30]  Exhibit 12d, p. 8, re: 2nd Certificate.  This form states, in part, "I/we hereby declared that I/we paid $100 for the convinience [sic] of using Emmanuel M. Assaf Debt Relief Agency's equipment and that the fee paid also covered the cost of the certificate by the approved personal financial management provider named as follows: "Sage Personal Finance."

In suggesting the fee was only $500, Assaf pointed to his documents in Exhibit 11b, specifically page 8, which shows the fee is $200 for "Ch. 7 Pet.," $100 for "Workbook," and $100+$100 for "1st & 2nd Certif."[31]  However as discussed above, the evidence reflects the Debtors actually paid $1,400 to Olmos and Assaf received either $500 or $700.  This evidence supports a finding that Assaf received $700 of the $1,400 the Debtors paid to Olmos, but all of these figures are well above the $200 disclosed on the Debtors' Statement of Financial Affairs.[32]  The Court finds the entire $1,400 should have been disclosed on the Statement of Financial Affairs, question 9, and on the *Disclosure of Compensation of Bankruptcy Petition Preparer*.

## 5.    Other Proceedings Involving Assaf

In his closing, the UST summarized numerous proceedings that have been brought against Assaf in other courts.  Pleadings and orders from these other proceedings were admitted into evidence.  These cases include: 1) *In re Espinoza*, a Chapter 7 case (Bankr. C.D. Ca., Case No. LA 07-bk-18881-BB), as well as eight other cases brought by the UST against Assaf in the Central District of California between 1999 and 2007, in which various fines, penalties and orders were entered against Assaf, including an order enjoining Assaf from preparing or assisting in preparing any bankruptcy documents for filing in the Central District of California pursuant to § 110(j)(3);[33] 2) *The People of the State of Colorado v. Assaf* (Colo. Case No. 09SA080) in which the Colorado Supreme Court enjoined Assaf from engaging in the unauthorized practice of law and assessed costs against him;[34] 3) *In re Marco Antonio Briones-Coroy* (Bankr. D. Colo., Case No. 10-40900-SBB) in which Judge Brooks of this Court issued an Order and Judgment on June 1, 2011, finding Assaf engaged in unfair and deceptive practices by not providing a written receipt for cash transactions and by using an unclear Fee Disclosure Statement;[35] and 4) *United States Trustee v. Assaf* (*In re Marco Antonio Briones-Coroy*) (Bankr. D. Colo., Adv. Pro. 11-01311-SBB) in which the UST filed an adversary proceeding against Assaf regarding two hundred forty-one bankruptcy cases filed in 2010 and 2011.[36]  The Court has reviewed these Orders and has considered them in making the conclusions contained in this Order.

---

[31]  Exhibit 11b, p. 8.  In his response to the UST's interrogatories, Assaf admitted he received $500 on September 22, 2011 (Exhibit 11a).

[32]  Exhibit 1, p. 14 of 52.  Statement of Financial Affairs, question 9.

[33]  Exhibit 13.

[34]  Exhibit 14.

[35]  Exhibit 15.

[36]  Exhibit 16.  This adversary proceeding (11-01311-SBB) was initiated on May 13, 2011, and is scheduled for trial on June 4, 2012.  The UST's Motion for Summary Judgment is currently pending before Judge Brooks.

## DISCUSSION

**1.      Remedies Under § 110 Regarding Bankruptcy Petition Preparers.**

This matter is governed primarily by § 110 of the Bankruptcy Code, titled, "Penalty for persons who negligently or fraudulently prepare bankruptcy petitions."  The allowed scope of a bankruptcy petition preparer is very limited.  Indeed, "[i]f the petition preparer does anything more than copying or typing information written by prospective debtors on official bankruptcy forms, then the petition preparer exceeds the authority of § 110."[37]

As an initial matter, the Court must determine whether the Respondents, Assaf and Olmos, are in fact bankruptcy petition preparers as defined in § 110(a).  A "bankruptcy petition preparer" (also known as a "BPP") is defined as "a person, other than an attorney for the debtor or an employee of such attorney under the direct supervision of such attorney, who prepares for compensation a document for filing."[38] The evidence clearly established that Assaf is a bankruptcy petition preparer as he and his staff prepared documents to be filed to commence the Debtors' joint bankruptcy case.  Moreover, Assaf admits he is a bankruptcy petition preparer.

Olmos, on the other hand, does not appear to fall squarely within the statutory definition.  The UST directs the Court to several cases, including *In re Thomas*, in arguing that although Olmos did not physically type the bankruptcy forms, she still falls within the definition of a bankruptcy petition preparer.[39]  However, *Thomas* and other cases cited by the UST deal with internet or website operators, a circumstance not present in the instant case.

The case of *In re McGill* is somewhat closer to the facts in the instant case.[40]  In *McGill*, the "referring company" named J & L (akin to Olmos in this case) advertised foreclosure mitigation services and advised the debtor that filing a Chapter 13 bankruptcy case would stop a foreclosure.  J & L charged and received a fee of $1,050. J & L provided access to complete the credit counseling, blank bankruptcy forms, and instructions on filing documents with the court.  The debtor then completed the forms by hand and J & L forwarded or referred the forms to a person represented to be an attorney, Dyke Marler.  J & L paid Marler $199 to type up the documents and complete the bankruptcy filing process.  The debtor then received the typed forms back from J & L.  The Bankruptcy Court found, "[b]ecause Marler and J & L worked in concert in

---

[37]  *In re Gomez*, 259 B.R. 379, 386-387 (Bankr. D. Colo. 2001).

[38]  11 U.S.C. 110(a)(1).

[39]  *In re Thomas*, 315 B.R. 697 (Bankr. N.D. Ohio 2004).

[40]  *In re McGill*, 2007 WL 1119939 (Bankr. E.D. Tenn. 2007).

the preparation of the documents filed in both of the Debtor's Chapter 13 bankruptcy cases, the court deems the compensation paid by the Debtor to have been received by both of them jointly."[41]

In another pertinent case, *In re Duran*, it was argued that Legal Aid Network, Inc. was a "referral agency" and not a bankruptcy petition preparer. Based on the evidence before the court in *Duran*, the Court found "that Legal Aid Network was more than a referral agency and that Ms. Johnson was not an independent contractor for the purposes of 11 U.S.C. § 110."[42]   The Court made the following findings to support its conclusion that Legal Aid Network, Inc. and its managing agent and control person, Mr. Brown (and not the typist), were liable under § 110:

1. Mr. Brown set the fee for the bankruptcy petition preparation work;
2. Mr. Brown was the point of contact for potential customers by virtue of Legal Aid Network's advertisements;
3. Mr. Brown selected the person to complete the work contracted for [in *Duran* it was a typist named Ms. Johnson who prepared certain documents to be filed];
4. The alleged agreement between Ms. Johnson and Mr. Duran was an after-the-fact artifice to make it appear that Ms. Johnson was an independent contractor long after the fee had been paid and the work done; and
5. Mr. Brown directed all of the activities of Legal Aid Network and was liable for its acts as its managing agent regardless of the actual ownership and legal structure of the "company."[43]

In the case at hand, Olmos clearly should have been included on the Statement of Financial Affairs, question 9, and she should not have given the Debtors any legal advice.  However, there was no evidence establishing that she prepared any document for filing, or worked in conjunction with Assaf's office in preparing the Debtors' bankruptcy documents.  The undisputed facts before the Court are that Olmos met with the Debtors on September 18, 2011, gathered the Debtors' pay statements and tax returns, received a fee of $1,400, provided some advice regarding bankruptcy, and referred them to Assaf's office – all within a single 15 or 20 minute meeting.  There was no evidence, inference, or allegation that Olmos provided the Debtors with a questionnaire, bankruptcy "kit," typing services, computerized services, computer

---

[41] *In re McGill*, 2007 WL 1119939, *6 (Bankr. E.D. Tenn. 2007).  Similarly, in the case of *In re William*, 1997 WL 781878 (Bankr. E.D. Pa. 1997), the Bankruptcy Court found two individuals responsible under § 110 because "Bell and WTA jointly filed and caused the filing of a Disclosure of Compensation of Bankruptcy Petition Preparer at an amount of $125, when in fact, as is disclosed less conspicuously in the Debtor's Statement of Financial Affairs, WTA charged the Debtor a total of $950 for its services."

[42] *In re Duran*, 347 B.R. 760, 765 (Bankr. D. Colo. 2006).

[43] *In re Duran*, 347 B.R. 760, 765-766 (Bankr. D. Colo. 2006).

access, online forms, Official Bankruptcy Forms, or other aids that are discussed in the cases cited by the UST.  While the Court does not believe Olmos acted appropriately in regards to this case, the remedies in § 110 do not appear to govern her misconduct. This is, unfortunately, in part because she did not appear at the hearing and Assaf was not called as a witness to testify regarding his relationship or agreement with Olmos. While this Court agrees with *In re Thomas* "that 'preparation' goes beyond the physical typing or mere printing of the documents," there simply was not enough evidence to establish that Olmos acted as a bankruptcy petition preparer in this case.[44]  Thus, the remainder of the discussion on § 110 concerns Assaf, and not Olmos.

Another threshold issue the Court must address "is whether the various documents filed with the Court constitute separate documents or one document for the purposes of § 110."[45]  This Court agrees with the majority position outlined in *In re Springs*, that is, "[t]he petition, the schedules, the statement of intention, the statement of financial affairs, and the verification of creditor matrix are each a separate 'document for filing' and may each give rise to separate violations of the statute."[46]

Using the format of the UST's Attachment A to the *United States Trustee's Pre-Trial Statement of Facts and Suggested Conclusions of Law*, the Court will address the requested relief under § 110.

| FINES, STATUTORY DAMAGES & PENALTIES AGAINST <u>EMMANUEL ASSAF</u> | | |
|---|---|---|
| **I.  Statutory Fines.** Per § 110(l)(1) - the Court may award up to $500 for "each" violation. | **Requested by the UST** | **Ordered by the Court** |
| Failure to sign and provide identifiers on documents prepared by Assaf pursuant to §§ 110(b)(1) and (c). § 110(b)(1) requires, "A [BPP] who prepares a document for filing shall sign the document and print on the document the preparer's name and address. . ." § 110(c)(1) provides, "A | The UST requests the Court impose a $2,000 fine for the following four instances of documents prepared without Assaf's signature and identifier: (1) Form B1D (Statement of Compliance with Credit Counseling Requirement) (Exhibit 1), (2) Form B22A ("Means | The forms identified by the UST, do not contain a signature line or block for an attorney or a BPP to complete.  The Court does not believe Assaf was trying to conceal his identity as he included his name, address and Social Security number on various other documents prepared by his office, |

---

[44] *In re Thomas*, 315 B.R. 697, 703-704 (Bankr. N.D. Ohio 2004) (relying on *In re Jolly*, 313 B.R. 295 (Bankr. S.D. Iowa  2004).

[45] *In re Springs*, 358 B.R. 236, 241 (Bankr. M.D. N.C. 2006).

[46] *In re Springs*, 358 B.R. 236, 242 (Bankr. M.D. N.C. 2006).

| | | |
|---|---|---|
| [BPP] who prepares a document for filing shall place on the document, after the preparer's signature, an identifying number that identifies individuals who prepared the document." | Test") (Exhibit 1), (3) Form 8 (Statement of Intention) (Exhibit 2), and (4) Form B23 (Certificate of Postpetition Financial Management Course) (Exhibit 6). | including all the forms that have a signature line/block for an attorney and/or BPP. In addition, the "Disclosure of Compensation of Bankruptcy Petition Preparer" (Form B280) (Exhibit 3) and "Declaration and Signature of Non-Attorney Bankruptcy Petition Preparer" (Form B19)(Exhibit 4) disclose Assaf prepared the Petition, Schedules A-J, Summary of Schedules, Statement of Financial Affairs, Statement of Intention, Means Test Calculation, and the Creditor Matrix.  Therefore, the Court finds Assaf only failed to disclose that he prepared the certifications concerning the pre-petition credit counseling and post-petition financial management course.  While these forms do not have an attorney or BPP signature block on them, the Court will nonetheless impose a fine regarding them because §§ 110(b) and (c) requires such disclosure on the forms and because such nondisclosure aided in concealing Assaf's role in inappropriately completing the course for the Debtors. Further, he did not disclose that he prepared these forms on his "Disclosure of Compensation" or "Declaration and Signature of Non-Attorney Bankruptcy Petition Preparer."  Thus, the Court will impose a $1,000 fine for this violation. |
| Prohibited legal advice, § 110(e)(2)(A) and (B). | $11,000 for the following 22 instances | Through the exhibits and testimony of Reza-Ortega, |

| | | |
|---|---|---|
| § 110(e) (2)(A) provides, "A [BPP] may not offer a potential bankruptcy debtor any legal advice, including any legal advice described in subparagraph (B)." | (22 x $500 = $11,000)<br><br>8 instances of specific legal advice provided by Assaf:<br>(1) To file Chapter 7,<br>(2) That debts are dischargeable, and<br>(3) Each of 6 exemptions on Schedule C.<br><br>14 instances where Assaf created forms de novo and characterized property and debts in forms and Schedules:<br>(1) Petition,<br>(2) Each of the 9 Schedules,<br>(3) Statement of Financial Affairs,<br>(4) Means Test, Form B22,<br>(5) Statement of Intent,<br>(6) Application for Waiver of Filing Fee. | Soberanis, and Tejerina, the UST has shown that Assaf violated § 110(e)(2) by providing oral and written legal advice, including the pre-filling of answers on the Petition, Schedules, Statement of Financial Affairs, Means Test and Statement of Intent. The Court agrees with the UST that an $11,000 fine is appropriate and such will be ordered. |
| Failure to Disclose All Fees Received pursuant to § 110(h)(2), which provides, "A declaration under penalty of perjury by the [BPP] shall be filed together with the petition, disclosing any fee received from or on behalf of the debtor within 12 months immediately prior to the filing of the case, and any unpaid fee charged to the debtor." | $500 fine under § 110(h)(2) for Assaf's failure to disclose fees received above $200 disclosed on form. | Whether Assaf actually received $500 or $700 from Olmos, the false disclosure that he only received $200 is a violation of § 110(h)(2). Thus, the Court will impose a $500 fine for this violation. |
| **Subtotal of statutory fines.** | $13,500 (requested for 27 violations) | $12,500 ordered. |
| Fines Tripled. § 110(l)(2)(D) provides "The court *shall* triple the amount of a fine assessed under paragraph (1) in any case in which the court finds that a bankruptcy petition preparer . . . (D) prepared a document for filing in a manner that failed | $13,500 x 3 = $40,500.<br><br>The UST requests the Court triple the statutory fines for Assaf's failure to disclose his preparation of: (1) Form B1D (Statement of Compliance with Credit Counseling Requirement) (Exhibit 1); and | Based on the Court's findings above, § 110(l)(2)(D) requires the Court triple the amount of the fine assessed under § 110(l)(1). Thus, the fines of $12,500 shall be tripled to $37,500. |

| to disclose the identity of the bankruptcy petition preparer." | (2) Certificate of Postpetition Financial Management Course (Exhibit 6). | |
| --- | --- | --- |
| **Total of statutory fines.** | $40,500.00 requested. | $37,500 ordered. |

Pursuant to § 110(l)(4)(A), statutory fines imposed under § 110(l) "shall be paid to the United States trustees, who shall deposit an amount equal to such fines in the United States Trustee Fund."

| **II.  Mandatory Statutory Damages.** | **Requested by the UST** | **Ordered by the Court** |
| --- | --- | --- |
| § 110(i)(1) provides: If a bankruptcy petition preparer violates this section or commits any act that the court finds to be fraudulent, unfair, or deceptive, on the motion of the debtor, trustee, United States trustee (or the bankruptcy administrator, if any), and after notice and a hearing, the court shall order the bankruptcy petition preparer to pay to the debtor-- (A) the debtor's actual damages; (B) the greater of-- (i) $2,000; or (ii) twice the amount paid by the debtor to the bankruptcy petition preparer for the preparer's services; and (C) reasonable attorneys' fees and costs in moving for damages under this subsection. | The UST argues Assaf must pay a minimum of $2,000 in statutory damages for each Debtor, or $4,000 total. | As stated above, the evidence shows, and the Court finds, Assaf has violated § 110.  Thus, pursuant to § 110(i)(1), the Court orders Assaf to pay $2,000 to Soberanis and $2,000 to Tejerina for a total of $4,000. |
| **Total of Statutory Damages.** | $4,000 requested. | $4,000 ordered. |
| **III.  Fee Forfeiture.** | **Requested by the UST** | **Ordered by the Court** |
| § 110(h)(3) provides: (A) The court shall disallow and order the immediate turnover to the bankruptcy | The UST argues Assaf must forfeit the $700 fee charged. | As stated above, the evidence shows, and the Court finds, Assaf has violated § 110.  The Court |

| trustee any fee referred to in paragraph (2)-- (i) found to be in excess of the value of any services rendered by the bankruptcy petition preparer during the 12-month period immediately preceding the date of the filing of the petition; or (ii) found to be in violation of any rule or guideline promulgated or prescribed under paragraph (1). (B) All fees charged by a bankruptcy petition preparer may be forfeited in any case in which the bankruptcy petition preparer fails to comply with this subsection or subsection (b), (c), (d), (e), (f), or (g). | | has also found that the evidence supports a finding that Assaf received $700 for his services on the Debtors' bankruptcy case.  Thus, pursuant to § 110(h)(3), the Court orders Assaf to forfeit the $700 fee charged. |
|---|---|---|
| **Total of Fee Forfeiture.** | $700 requested. | $700 ordered. |

## 2.    Remedies Under § 526 Regarding Debt Relief Agencies.

Pursuant to § 101(12A), "[t]he term 'debt relief agency' means any person who provides any bankruptcy assistance to an assisted person in return for the payment of money or other valuable consideration, or who is a bankruptcy petition preparer under section 110."[47]   The Court finds the Debtors are "assisted persons" and Assaf and Olmos both fall within the definition of a "debt relief agency."

Section 526(a) provides,

A debt relief agency shall not--

(1) fail to perform any service that such agency informed an assisted person or prospective assisted person it would provide in connection with a case or proceeding under this title;

---

[47]  11 U.S.C. § 101(12A).  The statute goes on to provide limited exceptions, none of which apply in this case.  Section 101(3) provides, "[t]he term 'assisted person' means any person whose debts consist primarily of consumer debts and the value of whose nonexempt property is less than $175,750."  11 U.S.C. § 101(3).

(2) make any statement, or counsel or advise any assisted person or prospective assisted person to make a statement in a document filed in a case or proceeding under this title, that is untrue or misleading, or that upon the exercise of reasonable care, should have been known by such agency to be untrue or misleading;

(3) misrepresent to any assisted person or prospective assisted person, directly or indirectly, affirmatively or by material omission, with respect to--
    (A) the services that such agency will provide to such person; or
    (B) the benefits and risks that may result if such person becomes a debtor in a case under this title; or

(4) advise an assisted person or prospective assisted person to incur more debt in contemplation of such person filing a case under this title or to pay an attorney or bankruptcy petition preparer a fee or charge for services performed as part of preparing for or representing a debtor in a case under this title.

The Court finds Assaf violated § 526(a)(2) by making untrue and misleading statements by failing to properly disclose the fee he charged and received, and the source of such fee, including on the Statement of Financial Affairs, question 9, and on the Disclosure of Compensation of Bankruptcy Petition Preparer.  The Court further finds Assaf violated § 526(a)(2) by making untrue and misleading statements by failing to disclose Olmos' involvement in this case, including on the Statement of Financial Affairs, question 9.  Additionally, Assaf violated § 526(a)(2) in the circumstances surrounding the postpetition financial management course, by allowing a staff member essentially to take the course for Soberanis and by preparing a certification as to Tejerina, who was not present for the course.  Section 526(c) provides remedies for violations of § 526(a).  However, the Court finds § 110 already provides similar and adequate remedies in this case.  No further fines, sanctions, or damages will be assessed against Assaf under § 526.

As for Olmos, although she falls within the definition of a debt relief agency, it is not clear whether she has violated any of the requirements in § 526(a).  However, § 526(c) provides for remedies if a debt relief agency fails to comply with the material requirements of §§ 526, 527 or 528.  Section 527 requires certain disclosures be provided by the debt relief agency to the assisted person.  Section 528 contains additional requirements for debt relief agencies.  While the Court suspects Olmos has not complied with §§ 527 and 528, there was no testimony or other evidence presented on this issue.  Therefore, the Court finds it cannot assess any damages against Olmos under § 526.

**3.    Other Relief Under § 105.**

Section 105 provides for certain powers of the Court:

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.[48]

The Tenth Circuit Court of Appeals has discussed the scope of a Bankruptcy Court's use of § 105 as follows:

In *United States v. Energy Resources Co.*, 495 U.S. 545, 549, 110 S.Ct. 2139, 2142, 109 L.Ed.2d 580 (1990), the United States Supreme Court referred to the "traditional understanding" that bankruptcy courts are courts of equity and that under 11 U.S.C. § 105(a) they may "issue any order, process or judgment necessary or appropriate to carry out the provisions" of the Bankruptcy Code. (emphasis added) *In In re Western Real Estate Fund, Inc.*, 922 F.2d 592, 601 (10th Cir. 1990), modified on other grounds, *Abel v. West*, 932 F.2d 898 (10th Cir. 1991), we also recognized the "supplementary equitable powers" granted bankruptcy courts under 11 U.S.C. § 105(a), but went on to state that such powers, however, "may not be exercised in a manner that is inconsistent with the other, more specific provisions of the [Bankruptcy] Code."[49]

In this case, Olmos was provided notice, by the UST's Motion and this Court's OSC, that fines, penalties, injunctive or other relief could be entered against her under §§ 105, 110, and 526. While Olmos did file a response to the OSC, she simply denied the UST's allegations and asked that no fines, penalties or sanctions be entered against her. She did not attempt to explain her role in this case or assert any affirmative defenses. Further, she did not appear at the hearing to defend herself. In her absence, the unrebutted evidence before the Court is that Olmos charged and accepted $1,400 from the Debtors for one meeting lasting approximately 15 to 20 minutes. Although the Court is not informed in detail regarding the relationship or agreement between Olmos and Assaf, the Court finds no reason or evidence, other than fraud or deceptive practices, that would entitle Olmos to any fee in this case, $1,400 or $700. Therefore, pursuant to this Court's power under § 105 and to ensure an equitable result in this case, the Court orders Olmos to turnover the $1,400 fee charged and received from the Debtors to the Chapter 7 Trustee.

---

[48] 11 U.S.C. § 105(a).

[49] *In re Richards*, 994 F.2d 763, 765 (10th Cir. 1993).

**4.      Injunctive Relief Under §§ 105 and 110.**

The UST requests this Court issue a nationwide injunction permanently enjoining Assaf from, among other things, acting as a bankruptcy petition preparer, providing any services as a debt relief agency and providing any assistance or consultation to any person in connection with the filing of any bankruptcy case or any document in a bankruptcy case.  When certain findings are present, § 110(j) allows the Court to enjoin a bankruptcy petition preparer from engaging in certain conduct or from acting as a bankruptcy petition preparer in general.  Courts differ on whether an adversary proceeding is required before the Court may order injunctive relief under § 110(j).[50]  As explained by the Court in *In re Sattiewhite,*

> Injunctive relief is an extraordinary remedy and implicates a bankruptcy petition preparer's opportunity to operate a business, therefore, all the requirements of notice and due process are required before an injunction may be issued.  Section 110(j)(1) states that a civil action to enjoin a BPP may be initiated by the debtor, creditor, trustee, or U.S. trustee.  The Ninth Circuit Bankruptcy Appellate Panel, however, has stated that § 105(a) permits a bankruptcy judge to raise the matter so long as the "bankruptcy petition preparer receives essentially the same procedural protections that would be afforded in an adversary proceeding."  *In re Graves*, 279 B.R. 266, 272 (9th Cir. BAP 2002).[51]

In this case, the Court provided Assaf with an opportunity to respond, in writing, to the allegations in the UST's Motion, which Assaf did.  The Court also allowed Assaf the opportunity to testify at the evidentiary hearing, which he declined to do.  However, in the interest of judicial economy, due process, and to avoid inconsistent rulings, this Court will not rule on the § 110(j) injunction issue in this case.  Instead, the Court will defer to any injunctive relief determined by Judge Sidney B. Brooks in *United States Trustee v. Assaf* (*In re Marco Antonio Briones-Coroy*) (Bankr. D. Colo., Adv. Pro. 11-01311-SBB) in which the UST filed an adversary proceeding against Assaf regarding two hundred forty-one bankruptcy cases filed in 2010 and 2011.  That matter is before the Court in the context of an adversary proceeding and, as such, is the more appropriate forum for a court to determine whether a local or national injunction against Assaf is appropriate.

---

[50]  *See Fulton v. McVay*, 318 B.R. 546 (D. Colo. 2004).

[51]  *In re Sattiewhite*, 2009 WL 971597, *3 (Bankr. D. Nev. 2009).

## CONCLUSION

The Court finds the evidence presented clearly established Assaf acted as a bankruptcy petition preparer and violated numerous sections of §§ 110 and 526. The Court does not have sufficient evidence before it to make such conclusions regarding Olmos. As requested by the UST, the Court will postpone ruling on any of these issues as they pertain to Reza-Ortega. Accordingly, based on the above findings of fact and conclusions of law,

IT IS ORDERED that statutory fines pursuant to 11 U.S.C. § 110(l) are hereby entered against Emmanuel M. Assaf in the amount of $37,500.00, and shall be paid to the office of the United States Trustee, who shall deposit such amount in the United States Trustee Fund.

IT IS FURTHER ORDERED that statutory damages pursuant to 11 U.S.C. § 110(i)(1) are hereby entered against Emmanuel M. Assaf in the amount of $4,000, of which $2,000 shall be paid to Roberto E. Soberanis-Soberanis and $2,000 shall be paid to Soledad A. Tejerina.

IT IS FURTHER ORDERED that pursuant to § 110(h)(3) Emmanuel M. Assaf shall forfeit and turnover $700 to Janice A. Steinle, Chapter 7 Trustee.

IT IS FURTHER ORDERED that due to Assaf's prior case before the Colorado Supreme Court in *The People of the State of Colorado v. Assaf* (Colo., Case No. 09SA080) and the findings in this Order regarding legal advice, the Court directs that the Clerk of the Court serve a certified copy of this Order on the State Bar of Colorado.

IT IS FURTHER ORDERED that pursuant to § 105(a) San Juanita Olmos shall disgorge and turnover $1,400 to Janice A. Steinle, Chapter 7 Trustee.

IT IS FURTHER ORDERED that any relief sought against Rocio Reza-Ortega is held in abeyance pending a request by the United States Trustee to set the matter for a hearing.

Dated:April 12, 2012                    BY THE COURT:

_____
Michael E. Romero
United States Bankruptcy Judge